# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Nathan R. Clagg,**
**Claimant Below, Petitioner**

**vs.)    No. 21-0744    (BOR Appeal No. 2056372)**
**(Claim No. 2020001019)**

**Constellium Rolled Products Ravenswood, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Nathan R. Clagg appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Respondent Constellium Rolled Products Ravenswood, LLC ("Constellium Rolled Products"), filed a timely response.[1] The issues on appeal are additional compensable diagnoses and medical treatment. On August 23, 2019, the claims administrator denied requests to add rotator cuff tear as a compensable component of the claim and for a referral and authorization for surgery. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's order in its decision on January 27, 2021. The decision was affirmed by the Board of Review on August 23, 2021. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review's decision is appropriate. *See* W. Va. R. App. P. 21.

Mr. Clagg was employed as a material expeditor for Constellium Rolled Products when he suffered an injury to his left shoulder in the course of his employment on June 18, 2019. The injury occurred as he was cleaning the dross room and picked up a pan of debris to throw to the side. When he did so, he felt a sharp, stabbing pain in the top of his shoulder going into his arm pit. He continued working for a short time shoveling dross waste material until he felt continued burning pain in his shoulder. Mr. Clagg sought treatment at Activate Healthcare on that same date. He received a physical examination and was assessed with a muscle strain in his left shoulder. He completed an application for benefits on June 21, 2019, and the physician's portion of the application was completed by Connie Dorfner, PA-C, an Activate Healthcare employee. An x-ray of his left shoulder revealed moderate left glenohumeral and acromioclavicular ("AC") joint arthritis.

Mr. Clagg came under the care of Robert M. Holley, M.D., and underwent an MRI at Pleasant Valley Hospital on July 8, 2019. Dr. Holley reported that Mr. Clagg complained of a

---

[1] Nathan R. Clagg is represented by Edwin H. Pancake, and Constellium Rolled Products Ravenswood, LLC, is represented by Tracey B. Eberling.

chronic dull ache of the left shoulder that increased with range of motion. The MRI findings were interpreted as demonstrating:

> [c]omplex glenoid labrum tearing; subchondral cystic changes in the glenoid suggesting FOCI of the overlying full thickness cartilage damage; low grade partial thickness tearing of the supraspinatus tendon bursal service, superimposed on moderate tendinosis; infraspinatus tendon low grade intrasubstance tearing superimposed on moderate tendinosis; low grade partial thickness subscapularis articulator tear, allowing the long head of the biceps tendon to partially sublux out of the bicipital groove; severe tendinosis of the long head of the biceps tendon; moderate subacromial-subdeltoid bursitis and mild primary osteoarthritis of the acromioclavicular joint.

Dr. Holley subsequently referred Mr. Clagg to Stanley S. Tao, M.D., with Scott Orthopedic.

The MRI films were sent to Diagnostic Dating Specialists for an Age of Injury analysis. In a report dated July 31, 2019, Jonathan Luchs, M.D., concluded that Mr. Clagg's MRI of the left shoulder demonstrated chronic degenerative changes of the tendons, labrum, and joints. The findings were determined to be chronic. Dr. Luchs concurred with the primary reader's findings; however, he disagreed with the findings of infraspinatus tearing. He also disagreed with the primary reader's description that the acromioclavicular joint arthropathy was mild because he found moderate to severe osteoarthropathy of the acromioclavicular joint during the exam.

After determining that Mr. Clagg had suffered a rotator cuff tear, as revealed by his MRI, Dr. Holley sought to have the condition added as a compensable component of the claim and requested that he be authorized to see a specialist concerning the diagnosis. On August 6, 2019, the claim was held compensable for the diagnosis of strain of muscle(s) and tendon(s) of the rotator cuff of the left shoulder. However, the claims administrator denied Mr. Clagg's request to add rotator cuff tear to the claim in an order dated August 23, 2019, on the grounds that it had received the report by Diagnostic Dating Specialists which found that the MRI results demonstrated chronic degenerative changes of the tendon, labrum, and joints. The claims administrator found that the condition claimed by Mr. Clagg was chronic and not a result of the injury that occurred on June 18, 2019. Mr. Clagg protested the claims administrator's decision.

In support of his protest, Mr. Clagg tendered an office note from Dr. Holley dated September 9, 2019, indicating that he still complained of a chronic dull ache of the left shoulder, increasing with range of motion. Dr. Holley performed a brief examination and stated that he was waiting for a referral to a surgeon to repair the rotator cuff. Subsequently, on December 23, 2019, Mr. Clagg underwent orthoscopic surgery of his left shoulder performed by Dr. Tao. Dr. Tao described the procedures being performed as (1) left shoulder arthroscopy with arthroscopic soft tissue biceps tenodesis; (2) arthroscopic acromioplasty and bursectomy, left shoulder; (3) arthroscopic removal of chondral flap and chondroplasty of glenoid, left shoulder; (4) arthroscopic capsular release, left shoulder; and (5) arthroscopic debridement of partial rotator cuff tear, left shoulder. Dr. Tao's post operative diagnoses were biceps tear of the left shoulder, partial left

rotator cuff of the shoulder, impingement, left shoulder, and left shoulder grade 3-4 chondral defect/flap.

In his office note, Dr. Holley reported that Mr. Clagg complained of a chronic dull ache of the left shoulder, which increased with range of motion and a decreased amount of grip on the left, with tingling in the fourth and fifth fingers. Dr. Holley mentioned that the rotator cuff tear needed to be added to the claim and a referral for left shoulder repair was required. In a special note, Dr. Holley stated, "left shoulder sprain was initially used until the findings in the MRI performed on 7/8/19 that shows a left rotator cuff tear."

Mr. Clagg testified at a deposition held on January 3, 2020, that he never experienced any pain in his left shoulder prior to the date of his compensable injury on June 18, 2019. He stated that at the time of his injury, he was in the dross room cleaning up a mess. He picked up a pan and threw it to his left-hand side. When he did, he felt a sharp stabling pain at the top of his shoulder that radiated into his arm pit. He continued to shovel several more loads of dirt when the pain increased. Mr. Clagg reported the incident to his supervisor and went to the plant's medical facility to see the plant doctor. He eventually filed a workers' compensation claim after being diagnosed with a strain. The pain greatly increased to the point that he sought another physician and underwent an MRI. Mr. Clagg testified that he had never received any medical treatment for his left shoulder prior to June 18, 2019, and never injured his left shoulder due to falls or accidents. He stated that "it was a healthy shoulder until the midnight of June 18th." Although Dr. Holley wanted him to see Dr. Tao, the request was denied by his workers' compensation carrier. So, he visited Dr. Tao using his regular insurance, and it was determined that he had a rotator cuff tear and tendons that needed to be repaired. Mr. Clagg underwent surgery on December 23, 2019, but he was still recovering. He alleged that Dr. Tao told him that his shoulder condition was caused by the compensable injury and not by natural wear and tear.

In a report dated March 17, 2020, Dr. Tao indicated that he was seeing Mr. Clagg for a post-operative evaluation. Dr. Tao noted that he had full range of motion of the left shoulder with some retained weakness. The injury was assessed as "[s]train of muscle, fascia and tendon of other parts of the biceps" and "[i]ncomplete rotator cuff tear or rupture of the left shoulder, not specified as traumatic."

In an independent medical evaluation report dated October 26, 2020, Prasadarao Mukkamala, M.D., stated that he performed a physical examination of Mr. Clagg and reviewed his clinical history. Dr. Mukkamala concluded that he had reached his maximum degree of medical improvement with residual impairment. After conducting range of motion studies and testing for flexion, Dr. Mukkamala opined that Mr. Clagg's left rotator cuff tear and impingement were degenerative conditions not related to the compensable injury. Referring to the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), he indicated that Mr. Clagg had 1% whole person impairment attributable to his compensable injury.

In a final decision dated January 27, 2021, the Office of Judges found that Mr. Clagg sustained a compensable left shoulder sprain injury. However, the preponderance of credible medical evidence fails to demonstrate that his left shoulder rotator cuff tear is attributable to

compensable injury. In addressing whether Mr. Clagg's rotator cuff tear is related to the June 18, 2019, compensable injury, the Office of Judges stated:

> Initially, the undersigned is of the opinion that the argument of counsel for the employer that there is no medical opinion of record specifically and with particularity explaining how the claimant's rotator cuff tear is related to the compensable injury is accurate. While it may be true that Dr. Holley requested that such condition be included as a compensable diagnosis in the claim, his report does nothing more than indicate his intention to make such a request. A plain reading of the MRI report reveals at the very least the presence of mild degenerative changes in the claimant's left shoulder, although Dr. Luchs disagreed with observation, stating that such changes were at least moderate in nature and perhaps severe. Any request to assess the claimant's tear to the compensable injury without consideration of this alternate explanation for the claimant's condition lacks credibility.

The Office of Judges further found that Dr. Luchs's opinion is substantiated by that of Dr. Mukkamala. In discussing Mr. Clagg's evidence, the Office of Judges stated:

> In fairness to the claimant's position, all he has is Dr. Holley's request to add the diagnosis and his testimony that Dr. Tao indicated that the claimant's condition was related to the compensable injury. Dr. Tao may [have] so stated to the claimant, but his report of March 17, 2020, does not specifically state that the claimant's condition is attributable to the compensable injury.

The Office of Judges concluded that because the record does not demonstrate that Mr. Clagg's left shoulder tear is attributable to the compensable injury, a referral and request for surgery cannot be authorized as sufficient treatment due to exceeding the bounds of care under West Virginia Code of State Rules § 85-20. The order of the claims administrator dated August 23, 2019, was affirmed. On August 23, 2021, the Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its final decision.

This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review, and when the Board's decision affirms prior rulings by both the Workers' Compensation Commission and the Office of Judges, we may reverse or modify that decision only if it is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is based upon a material misstatement or mischaracterization of the evidentiary record. *See* W. Va. Code §§ 23-5-15(c) & (d). We apply a de novo standard of review to questions of law. *See Justice v. W. Va. Off. Ins*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

Mr. Clagg argues on appeal that it is undisputed that he suffered no problems with his left shoulder prior to lifting and throwing a metal pan while cleaning in the performance of his job on June 18, 2019. Prior to that date, he suffered no physical problems with his left shoulder nor any prior injuries to the shoulder. He maintains that it was not until he was engaged in the work for his

4

employer that his left shoulder symptoms began. He further states that an MRI disclosed a torn rotator cuff of the left shoulder in addition to the compensable sprain/strain. Mr. Clagg asserts that logic dictates that the torn rotator cuff resulted from the compensable injury, and he is entitled to receive treatment as needed to address the condition. Constellium Rolled Products counters the arguments made by Mr. Clagg by claiming that there is no medical opinion in the record asserting that the rotator cuff was torn in the course of his employment.

In Syllabus Point 3 of *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), this Court created a general rule that:

> [a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

Syllabus Point 5 of *Moore v. ICG Tygart Valley, Inc.*, 247 W. Va. 292, 879 S.E.2d 779 (2022) states:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

The evidence of record raises a possible inference of causation for Mr. Bragg's torn rotator cuff because there is no evidence that he suffered physical problems with his left shoulder prior to his date of injury, and he suggests that his injury, thought to be a sprain/strain, was obviously a more significant injury confirmed by an MRI revealing a torn rotator cuff of the left shoulder in addition to the sprain/strain. However, the record still lacks sufficient medical evidence showing a causal relationship between Mr. Clagg's compensable injury and his alleged rotator cuff tear injury. During his deposition, Mr. Clagg testified that he discussed the origin of the injury with Dr. Tao, who told him it was an acute injury. The operative report from Dr. Tao does not reference any injury, and his post-operative progress note diagnosed shoulder strain and a "not specified as traumatic" partially torn rotator cuff. Without a medical opinion explaining how Mr. Clagg incurred a rotator cuff injury in the course of and resulting from his employment pursuant to West Virginia Code § 23-4-1, he cannot satisfy the requirements of *Moore*. The preponderance of the medical evidence supports the claims administrator's order, as well as the underlying decisions of the Office of Judges and Board of Review.

Affirmed

5

**ISSUED: September 14, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

**DISQUALIFIED:**

Justice C. Haley Bunn